UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

DAVIDSON NOEL,

              Plaintiff,

                                        DECISION AND ORDER

                                        Case No. 17-CV-198-FPG

v.

JEFFREY MAKOWSKI, LISA SCHULTZ,
and MICHAEL SINGLETON,

              Defendants.

_____

## INTRODUCTION

*Pro se* Plaintiff Davidson Noel, a prisoner now in the custody of Clinton Correctional Facility, brings this action pursuant to 42 U.S.C. § 1983 alleging that Corrections Officers Jeffrey Makowski and Michael Singleton used excessive force against him by beating him at the behest of Defendant Lisa Schultz, a prison counselor, when he was an inmate at Gowanda Correctional Facility. ECF No. 1.[1] Defendants move for summary judgment on the basis that Plaintiff failed to exhaust his administrative remedies before bringing this action as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). ECF No. 46. For the reasons stated below, Defendants' motion for summary judgment is GRANTED.

---

[1] On December 18, 2017, this Court screened Plaintiff's complaint pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A. It allowed Plaintiff's excessive force claims against Makowski, Schultz, and Singleton to proceed, dismissed with prejudice Plaintiff's claims against Defendants Anthony Annucci, Susan Kickbush, and Donna Wilcox, and dismissed Plaintiff's claims regarding denial of medical care, free speech, and due process without prejudice and with leave to amend by January 26, 2018. ECF No. 10. Plaintiff failed to amend by that date. However, Plaintiff has since filed, without leave of Court, two amended complaints. ECF Nos. 30, 57. Plaintiff also filed various letters to the Court indicating that his legal mail was interfered with, which prevented him from timely filing the amended complaint. Neither of these amended complaints correct the deficiencies in the original complaint. The first amended complaint contains substantially similar allegations to the original complaint, and the second amended complaint sets forth entirely new and unrelated allegations. Accordingly, the Court declines to treat the amended complaints as operative. The claims within them, to the extent not addressed in this order, remain dismissed without prejudice.

1

**BACKGROUND**

Plaintiff claims that on September 14, 2016, Defendants Makowski and Singleton beat him because Defendant Schultz told them to "do something" about the fact that Plaintiff had called her by her first name. That same day, Plaintiff wrote a letter to Gowanda Superintendent Susan Kickbush which he described as a "formal complaint grievance" about the incident (the "September 14 Document"). ECF No. 46-3 at 5. Plaintiff testified that he gave the September 14 Document to a sergeant to be filed but never heard anything about it again. ECF No. 46-4 at 40.

Gowanda's records indicate that the September 14 Document was not filed, stamped, or assigned a grievance number. ECF No. 46-3 at 2.

However, Gowanda does have the September 14 Document in its files, and its records show that the incident was investigated. ECF No. 46-3 at 1. On September 14, 2016, Sergeant B. Connors drafted a memo to Lieutenant John Calleri indicating that Connors interviewed Plaintiff and Defendants about the beating and found no evidence to support Plaintiff's claims. ECF No. 46-3 at 8. In his Declaration in support of summary judgment, Calleri states that "from the paperwork it appears that [Plaintiff] must have sent his complaint to either the Superintendent or the Deputy Superintendent for Security" but it "was not sent by him to the Inmate Grievance Program since, if it was, it would have been assigned a grievance number and stamped 'received.'" ECF No. 46-3 at 3.

On October 7, 2016, Plaintiff was transferred from Gowanda to Upstate Correctional Facility. ECF No. 48 at 53. On October 10, 2016, Plaintiff filed a grievance at Upstate complaining about the September 14 incident and the subsequent denial of medical care. The October 10 grievance is not in the record, but in the record is an October 14, 2016 email from Donna Wilcox, the grievance supervisor at Upstate, to the grievance supervisor at Gowanda

indicating that she had received a grievance from Plaintiff about the September 14 incident and asking whether Plaintiff had filed anything at Gowanda. ECF No. 48 at 63. The record does not contain Gowanda's response to this email.

On October 17, 2016, Plaintiff wrote a letter to Wilcox indicating that he had "only forward [sic] one formal complaint to Gowanda Correctional Facility on 9-14-16 on the assaulted [sic] against both officer." ECF No. 48 at 62. The October 17 letter was marked with a grievance number. *Id.*

Plaintiff wrote another letter on October 17 to Prisoners' Legal Services complaining about the lack of response. ECF No. 48 at 55.

On November 1, 2016, the Inmate Grievance Review Committee ("IGRC") at Upstate returned a response to Plaintiff's October 10 grievance. ECF No. 48 at 53. Plaintiff signed the response form and checked the box indicating that he disagreed with the IGRC's response and wished to appeal to the Superintendent. *Id.* However, the section of the response form for the Grievance Clerk to complete indicating that the grievance was appealed and sent to the Superintendent is blank. *Id.* Thus, it is not clear whether Plaintiff ever submitted the appeal form to Upstate.

On November 22, 2016, Plaintiff wrote an "Amended Notice of Grievance" addressed to Superintendent Uhler of Upstate asking for a decision on his November 1, 2016 appeal and referencing the September 14, 2016 incident. ECF No. 48 at 65.

On November 27, 2016, Plaintiff wrote a letter to the New York State Police suggesting that Kickbush, Uhler, and Wilcox were "covering up" the September 14, 2016 incident. ECF No. 48 at 59. He maintained that he had appealed to the Upstate superintendent on November 1, 2016

3

and complained that his rights to appeal to the next step had been violated and that he wanted to appeal to the Central Office Review Committee (the "CORC"). *Id.* at 60.

On December 7, 2016, Plaintiff wrote another letter to Superintendent Uhler indicating that he had resubmitted copies of the September 14, 2016 grievance on October 10, 2016, after he arrived at Upstate. ECF No. 48 at 66. He again asserted that Wilcox and Uhler were covering up the September 14 incident. *Id.*

On March 3, 2017, Plaintiff filed his complaint in this Court.

## LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). While the court must view the inferences to be drawn from the facts in the light most favorable to the nonmoving party, *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), a party may not "rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986).

The non-moving party may defeat the summary judgment motion by making a showing sufficient to establish that there is a genuine issue of material fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). However, "mere conclusory allegations or denials" are not evidence and cannot by themselves create a genuine issue of material fact where none would otherwise exist. *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d Cir. 1980).

Because Plaintiff is proceeding *pro se,* his submissions are read liberally and interpreted to raise the strongest claims they suggest. *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011) (citation omitted). Nevertheless, proceeding *pro se* does not relieve a litigant from the usual summary judgment requirements. *See Wolfson v. Bruno*, 844 F. Supp. 2d 348, 354 (S.D.N.Y. 2011).

## DISCUSSION

**I.    The PLRA**

The PLRA states that

> [n]o action shall be brought with respect to prison conditions under section 1979 of the Revised Statutes of the United States (42 U.S.C. § 1983), or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

"[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Under the PLRA, before bringing a case in federal court, an inmate "must complete the administrative review process in accordance with the applicable procedural rules—rules that are defined not by the PLRA, but by the prison grievance process itself." *Johnson v. Killian*, 680 F.3d 234, 238 (2d Cir. 2012) (quoting *Jones v. Bock*, 549 U.S. 199, 218 (2007) (internal citation and quotation marks omitted)).

> To satisfy [the exhaustion] requirement, prisoners in New York must ordinarily follow a three-step [DOCCS] grievance process. The first step in that process is the filing of a grievance with the Inmate Grievance Resolution Committee. Next, the inmate may appeal an adverse decision to the prison superintendent. Finally, the inmate may appeal the superintendent's decision to the Central Office Review Committee ("CORC"). *Brownell v. Krom*, 446 F.3d 305, 309 (2d Cir. 2006). In general, it is only upon completion of all three levels of review that a prisoner may seek relief in federal court under § 1983.

5

*Crenshaw v. Syed*, 686 F. Supp. 2d 234, 236 (W.D.N.Y. 2010); *see also* N.Y. Comp. Codes R. & Regs. tit. 7, §701.1, *et seq.* (setting forth the Inmate Grievance Program).

The Supreme Court recently noted in *Ross v. Blake* that apart from "one significant qualifier," that is, the availability of administrative remedies, "the PLRA's text suggests no limits on an inmate's obligation to exhaust—irrespective of any 'special circumstances.'" 136 S. Ct. 1850, 1856 (2016) (internal quotation marks omitted) ("[M]andatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion."). There are three "circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief:" (1) prison officials are "unable or consistently unwilling to provide any relief to aggrieved inmates;" (2) the "administrative scheme" is "so opaque that . . . no ordinary prisoner can discern or navigate it;" or (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Williams v. Priatno*, 829 F.3d 118, 123-24 (2d Cir. 2016) (quoting *Ross*, 136 S. Ct. at 1859-60).

Here, Plaintiff does not specifically argue that any of these circumstances apply. The closest he comes is via his conclusory assertions in his letters that Kickbush, Uhler, and Wilcox "covered up" the September 14 incident. Plaintiff does not make any specific allegations or submit any evidence that a particular official prevented him from filing a grievance. *See Davis v. Grant*, No. 15-CV-5359 (KMK), 2019 U.S. Dist. LEXIS 20989, at *23 (S.D.N.Y. Feb. 8, 2019) (collecting cases holding that unsupported assertions that grievance was filed but somehow lost or destroyed are insufficient to defeat summary judgment).

Rather, the evidence shows that Plaintiff failed to properly file a grievance in the first place. Thus, the Court finds that none of the *Ross* circumstances apply and Plaintiff therefore failed to exhaust his administrative remedies.

## II. Plaintiff Failed to File a Proper Grievance at Gowanda

Defendants argue that Plaintiff's September 14 Document was not filed as a grievance because it was "not addressed to the IGRC, but to the Superintendent, was most likely sent to the Superintendent, and was treated by Gowanda as a complaint, not a grievance." ECF No. 46-2 at 6; *see also* ECF No. 46-3 at 3 (Declaration of Lt. Calleri concluding that Plaintiff "sent his September 14, 2016 complaint to the Administrative Team and not to the Inmate Grievance Program, and it was investigated as an inmate complaint and not as a grievance"). As noted, Gowanda's records indicate that the September 14 Document was not filed, stamped, or assigned a grievance number. ECF No. 46-3 at 2.

N.Y.C.R.R. § 701.5(a)(1) provides that an inmate must use Form #2131 to fill out a grievance, but if the form is not available, a complaint may be submitted on plain paper. Section 701.7(a)(1) provides that a supply of inmate grievance complaint forms (Form #2131) will be maintained in all Special Housing Units ("SHU"), where Plaintiff was confined at the time of the incident.

Plaintiff testified that he gave the September 14 Document to a sergeant who collected grievances from inmates in the SHU, ECF No. 46-4 at 35-40, but he has not explained why he failed to use the required form or suggested that it was unavailable.

Defendants argue that, as a matter of law, Plaintiff's September 14 Document cannot be considered a grievance because "[it] is settled that letters are not proper exhaustion." ECF No. 46-2 at 10.

Numerous courts have indeed held that letters to prison superintendents do not constitute grievances. *See, e.g.*, *McGowan v. Schuck*, No. 12-CV-6557-FPG, 2018 U.S. Dist. LEXIS 155399, at *10-11 (W.D.N.Y. Sep. 11, 2018) ("The Second Circuit has made clear that even if prison

7

officials have notice of a prisoner's claims as a result of such informal communications, the purposes of the PLRA's exhaustion requirement can only be realized through strict compliance with the applicable administrative procedures."); *Ferrer v. Racette*, No. 9:14-CV-1370 (GTS/DJS), 2017 U.S. Dist. LEXIS 206983, at *37 (N.D.N.Y. Dec. 15, 2017) (holding that construing a letter to the superintendent as a grievance would be "contrary to established law"); *Nelson v. Rodas*, No. 01-CV-7887, 2002 U.S. Dist. LEXIS 17359, 2002 WL 31075804, at *3 (S.D.N.Y. Sept. 17, 2002) ("Courts have repeatedly held that complaint letters to the [DOCCS] Commissioner or the facility Superintendent do not satisfy the PLRA's exhaustion requirements."); *Munger v. Cahill*, No. 9:16-CV-728 (BKS/CFH), 2018 U.S. Dist. LEXIS 123665, at *25 (N.D.N.Y. July 23, 2018) (holding that Plaintiff's correspondence to the superintendent and other DOCCS officials did not constitute proper exhaustion because "[i]t is well-established in the Second Circuit that any informal resolution or relief outside of the administrative procedures does not satisfy exhaustion requirements."); *Day v. Chaplin*, 354 F. App'x 472, 474 (2d Cir. 2009) (summary order) (noting that informal letters sent to prison officials "do not conform to the proper administrative remedy procedures"); *see also* 7 N.Y.C.R.R. § 701.2(a) (defining "grievance" as "a complaint, filed with an IGP clerk, about the substance or application of any written or unwritten policy, regulation, procedural or rule of the Department of Correctional Services or any of its program units, or the lack of a policy, regulation, procedure or rule. *A letter addressed to a facility or central office staff is not a grievance.*" (emphasis added)).

Accordingly, the Court concludes that Plaintiff did not properly file a grievance related to the September 14, 2016 incident while at Gowanda.

### III. Plaintiff Failed to Timely File a Grievance at Upstate

The record evidence suggests that Plaintiff filed a grievance about the September 14, 2016 event on October 10, 2016, after he was transferred to Upstate. To the extent that Plaintiff relies on the October 10 grievance to exhaust his administrative remedies as to the September 14 incident, his reliance fails because that grievance was not timely filed. *See* N.Y.C.R.R. § 701.5(a)(1) (requiring grievances to be filed within 21 days of occurrence).

### CONCLUSION

For these reasons, the Court finds that there are no genuine issues of material fact as to whether Plaintiff exhausted his administrative remedies. Consequently, Defendants' Motion for Summary Judgment (ECF No. 46) is GRANTED, and the Complaint is DISMISSED WITH PREJUDICE. The Clerk of Court is directed to enter judgment in favor of Defendants and close this case.

IT IS SO ORDERED.

Dated: August 16, 2019
       Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court